PRENDERGAST et al. v. CORD MEYER CO.

(Supreme Court, Appellate Term, First Department. January 7, 1916.)

1. BROKERS ⬡⟿49—REAL ESTATE BROKERS—RIGHT TO COMMISSION—AGREEMENT OF PARTIES.

Where real estate brokers employed by the owner of realty to procure a lessee therefor on certain terms secured a prospective lessee whose attorneys submitted a proposed lease to the owner differing materially from the owner's terms, the brokers were not entitled to a commission from the owner.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 70–72; Dec. Dig. ⬡⟿49.]

2. BROKERS ⬡⟿10—REAL ESTATE BROKER—TERMINATION OF EMPLOYMENT.

Where the owner of realty employed brokers to lease it on certain terms, and they secured a prospective lessee, who submitted to the owner a draft of a lease differing materially from that authorized, the owner acted within its rights in terminating the employment of the brokers.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 11; Dec. Dig. ⬡⟿10.]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by John C. Prendergast and John V. Smith against the Cord Meyer Company. Judgment for plaintiffs, and defendant appeals. Reversed, and complaint dismissed.

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Argued November term, 1915, before LEHMAN, BIJUR, and FINCH, JJ.

R. W. Kellogg, of Jamaica, for appellant.

O'Brien, Malevinsky & Driscoll, of New York City (Arthur F. Driscoll, of New York City, of counsel), for respondents.

FINCH, J. This is an action to recover commissions alleged to be due to plaintiffs for services in negotiating a lease of real property.

[1] For some time prior to June 8, 1914, the plaintiffs talked with the defendant regarding a lease of certain property owned by the defendant. On June 8th, John C. Prendergast, representing the plaintiffs, wrote to the defendant as follows:

"Regarding our conversation some time ago, if the theater proposition in Elmhurst is still open, will you kindly let me hear from you, and oblige."

Thereafter Mr. Prendergast, receiving a reply saying that the theater proposition was still open, called upon the agent of the defendant and informed him that he was a broker, and talked with him in regard to the proposition. The defendant's representative informed Prendergast that they wanted to lease the property for a term of 15 years at a rental of $2,500 a year, with a deposit of $5,000 on the lease, and that the defendant would erect a theater building not to cost over $20,000, and that the brokerage would be $375, and gave to Prendergast a lease to be used as a guide, leaving the details of the proposed leasing to be taken up later. The plaintiff understood that an agreement on the details of the leasing was essential to a performance of his undertaking.

Thereafter the attorneys for the lessee drew a proposed lease and submitted it to the representative of the defendant, who took it up with his attorney, and notified Mr. Prendergast or the attorneys for the lessees what changes they wished in the lease, and delivered this lease with the proposed changes marked in red upon it, together with the lease which was originally given as a guide with certain paragraphs marked thereon to be incorporated in the new lease, and also a typewritten paragraph concerning the terms of the deposit of $5,-000, from all of which the lessees or their attorneys were to draw the completed lease. A completed lease thereafter was drawn and submitted to the defendant's representative or its attorney, but such completed lease differed materially from the lease as outlined by the defendant. In the first place, the lease did not contain the paragraph regarding the terms upon which the $5,000 was to be deposited, but contained other and different terms. The proposed lease further did not contain certain of the paragraphs as set forth in the original lease which was to be used as a guide, but contained such provisions in an altered form. The proposed lease further contained a paragraph allowing assignments which was different from that asked for by the defendant. There were other provisions, but enough has been shown to clearly demonstrate that the broker did not bring himself within the rule of law allowing a recovery upon his part.

As was said in the leading case of Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441:

"But in all the cases, under all and varying forms of expression, the fundamental and correct doctrine is that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue."

From a recital of the foregoing facts, it is very evident that the broker did not bring the minds of the parties to an agreement in this case. As was also said in Haase v. Schneider, 112 App. Div. 336, 98 N. Y. Supp. 587:

" * * * The parties must be brought to an agreement, not alone as to the price, but as to the terms of exchange, the time of taking title, and all the incidents of the transaction."

[2] Shortly after the receipt of the last proposed lease by the defendant, the defendant decided to terminate the term of the employment of the broker, and did so by letter of October 16, 1914. In so doing the defendant undoubtedly acted within its rights. To quote again from Sibbald v. Bethlehem Iron Co. (supra, 83 N. Y. at page 384):

"One other principle applicable to such a contract as existed in the present case needs to be kept in view. Where no time for the continuance of the contract is fixed by its terms, either party is at liberty to terminate it at will, subject only to the ordinary requirements of good faith. Usually the broker is entitled to a fair and reasonable opportunity to perform his obligation, subject, of course, to the right of the seller to sell independently. But that having been granted him, the right of the principal to terminate his authority is absolute and unrestricted, except only that he may not do it in bad faith, and as a mere device to escape the payment of the broker's commissions."

And again from the same case (83 N. Y. 387):

"The efforts of the plaintiff had been thus unsuccessful. He had not made a bargain, he had failed to bring buyer and seller to an agreement, after having had four months of opportunity, and now his authority was terminated without his having earned commissions."

This case was followed and approved in Donovan v. Weed, 182 N. Y. 43, at page 46, 74 N. E. 563.

The defendant has the land still on its hands unrented, and I do not understand that there is any evidence of bad faith here.

The judgment must be reversed, with $30 costs to the appellant, and, in view of the testimony, the complaint dismissed, with costs. All concur.